**FLEMING v. CENTRAL CHEESE CO., Inc.**

No. 9266.

Circuit Court of Appeals, Seventh Circuit.

Nov. 15, 1947.

KERNER, C. J., dissenting.

Matthew M. Wallrich, of Shawano, Wis., for appellant.

Charles H. Cashin, U. S. Atty., and James E. Doyle, Asst. U. S. Atty., both of Madison, Wis., for appellee.

Before MAJOR, KERNER and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This action was commenced by the Office of Price Administration (the instant plaintiff subsequently substituted) to recover treble damages on behalf of the United States, pursuant to the provisions of Sec. 205(e) of the Emergency Price Control Act of 1942, 56 Stat. 23, 50 U.S.C.A.Appendix, § 901 et seq., as amended by the Act of October 2, 1942, Pub. Law 729, 77th Congress, Second Session, Chap. 578, as amended by the Stabilization Extension Act of June 30, 1944, Pub. Law 383, 78th Congress, Second Session. The complaint alleged that the defendant, a corporation located in the city of Marshfield, state of Wisconsin, was engaged in the business among other things of selling cheese at wholesale and that between the dates of March 21, 1944 and May 17, 1944, it sold and delivered cheddar cheese at prices in excess of the maximum price established therefor by Maximum Price Regulation 289 as amended (7 F.R. 10996).

The court made findings of fact and conclusions of law, and on November 7, 1946, rendered a judgment against the defendant in the amount of $7,060.70, from which defendant brings the instant appeal. The court found that the violation was neither willful nor the result of failure to take practicable precautions against its occurrence and denied plaintiff's claim for treble damages.

The essential contested issues are (1) whether the proof sustains the allegation that the defendant sold its cheese in excess of the applicable price regulation, and (2) whether the action should have been dismissed for failure of the plaintiff to allege or show that certain conditions precedent to bringing the suit had been met.

Plaintiff's cause of action, as well as the judgment rendered, is predicated solely upon the theory that the involved sales were made by the defendant as a "primary wholesaler," and the judgment represents the difference in the price received by the defendant and the ceiling price fixed by the Regulation for sales made by a wholesaler in that category.

During the period of the involved sales, Price Regulation 289 contained subsection (c), entitled "Sales of cheddar cheese and 'Processed cheddar cheese' by a wholesaler." By this subsection wholesalers were divided into three categories, (1) a "primary wholesaler," (2) a "service wholesaler," and (3) a "cash and carry wholesaler." A wholesaler's ceiling price depended upon his classification, that of a "primary wholesaler" having the lowest and that of a "cash and carry wholesaler" the highest. Both sides agree that the defendant did not come within the classification of a "service wholesaler," so the only classifications relevant to the instant suit are those of a "primary wholesaler" and a "cash and carry wholesaler."

"Primary wholesaler" is defined by the Regulation as "a person who sells to a wholesaler or to a retailer distributing warehouse." Plaintiff concedes that the sales in question were not made to a "wholesaler," but contends that they were made to a "retailer distributing warehouse." It is therefore pertinent to note that subsection (f) (7) of the Regulation defined a "retailer distributing warehouse" as "a place where cheese is received and held for disposition to retail stores," and that "chain store warehouses * * * are included in the meaning of 'retailer distributing warehouse.'" The defendant construed the Regulation as permitting it a classification of a "cash and carry wholesaler," and the sales were made upon the ceiling price fixed by the Regulation for sales made by a wholesaler within such classification. A "cash and carry wholesaler" is defined by the Regulation as "a person who sells to and does not make delivery to the physical premises of an individual retail store or to an individual commercial, industrial, institutional or non-federal governmental user." This classification had previously required that the sales be on a cash basis, but on February 29, 1944 (shortly before the making of the sales in question) was amended to permit the extension of credit.

■ Defendant's manager testified that after this amendment he was contacted by representatives of the large chain store organizations who informed him that the credit provisions meant that sales could

be made direct to their individual stores, f.o.b. his warehouse, at the "cash and carry" mark-up, and that invoices could be sent for payment direct to the paying office of the chain store organization. He also testified without contradiction that he consulted officials of the Chicago Office of Price Administrator and received their oral approval of defendant's classification as a "cash and carry wholesaler." We recognize that such approval could not be utilized as a defense, although it was perhaps material on the matter of treble damages and it also indicates defendant's good faith in attempting to interpret the Regulation and determine the classification to which it was entitled.

That the burden was upon the plaintiff to prove a factual situation which would entitle it to a judgment is not open to controversy. That the judgment was obtained on the theory that defendant was a "primary wholesaler" and therefore permitted to charge only the ceiling price fixed for those in that category is also beyond dispute. This must be so inasmuch as the amount of the judgment represents the difference between the ceiling price for those in such category and the price at which defendant's sales were made. A study of the record is convincing that this case was tried, decided and is presented here upon what we think is a fallacious theory that the three wholesaler categories fixed by the Regulation are mutually exclusive, and that by showing that defendant was not properly entitled to a classification as a "cash and carry wholesaler," it necessarily follows that it must be classified as a "primary wholesaler," and this notwithstanding that neither the findings of the court nor the proof brings the defendant within the definition of the latter.

First, referring to the findings and conclusions of the court, it is evident that they do not support the plaintiff's contention that the defendant was a "primary wholesaler." At the most, they only negative defendant's contention that it was entitled to a classification as a "cash and carry wholesaler." The court, so far as here material, found that the "defendant sold and delivered at wholesale to the following named national retail chain store organizations for redistribution to their retail stores, at prices in excess of the maximum prices * * * as follows * * * [naming four chain store companies and the amount of cheese sold to each]." The court further found:

"That the said cheese was purchased from the defendant in carload lots for redistribution to the individual retail stores of the purchasers. With each shipment the defendant enclosed in the car shipping and delivery instructions that it received from the purchasers, directing delivery to the purchasers' retail stores. That the said sales were not cash and carry sales but were made by the defendant as a primary wholesaler.

"That all of the shipments were made f.o. b. Marshfield, in accordance with the shipping instructions of the purchaser. Defendant mailed the invoices to the main offices of the chain store corporations and received payment of the invoices from said main offices."

Thus the court made no finding that the cheese was sold to "retailer distributing warehouse" where it was "received and held for disposition to retail stores," which is an essential element of the definition of a "primary wholesaler." In fact, the court in its findings does not even mention the word "warehouse," much less that the cheese was "received and held" in a warehouse "for disposition to retail stores."

Viewing the court's findings in their aspect most favorable to the plaintiff, the most that can be said is that they furnish support for the argument that defendant was not entitled to be classified as a "cash and carry wholesaler," inasmuch as the sales were found to have been made to the retail chain store organizations rather than to their individual retail stores. While the validity of this finding is an arguable matter, we think if accepted that it furnishes no support for the conclusion that the defendant was a "primary wholesaler." More than that, when we look beyond the court's findings, we find no substantial proof in support of the elements essential to require defendant's classification as a "primary wholesaler."

As is shown by the court's evidentiary findings, all the sales were made by the

defendant in carload lots, f.o.b. its warehouse at Marshfield, Wisconsin, upon orders received from the office of a chain store organization. Thus, at the time the cars were loaded title became vested in the purchaser and the defendant lost all control and dominion over the cheese, including its manner of distribution. The defendant, however, on instructions from the purchaser, attached to the inside of each car a manifest which contained instructions to the railroad that delivery was to be made to the purchaser's independent retail stores, the names of which were listed upon said manifest. Plaintiff offered in evidence its Exhibit 1, which contains the date, invoice number, the name of the chain store with the address to which shipment was made, and the quantity and description of cheese contained in each car. The information contained in this exhibit was obtained from the invoices and books of the defendant.

One of the items included in this exhibit was shipped to First National Stores, Inc., Yard No. 21, Somerville, Mass., via Grand Trunk, Central Vermont, and Boston and Maine Railroad. This shipment was made upon a written request by First National Stores, which stated: "We understand that this cheese is owned by the stores f.o.b. car at Marshfield on the cash and carry wholesaler basis." When the car was loaded the defendant included the manifest which listed thirty-two retail stores of First National Stores. The manifest contained the following direction to the railroad: "List stores delivered to and quantity delivered to each. Attach receipt, store stamped and signed by manager in each case, which should agree with entry on recovery sheet." Plaintiff in its brief argues that Yard No. 21 "may be a private railroad siding under the control of First National Stores;" and, if so, it could be treated as a warehouse from which distribution is made. After laboring this illusory theory plaintiff concedes that "the record contains no affirmative evidence to prove * * * that the First National Store sales were made 'to a retailer distributing warehouse,' as required by the definition of a primary wholesaler."

We have mentioned this sale to First National Stores particularly because it was agreed during the trial that it was typical of all the other sales involved in this case. It is because of this agreement, so the defendant asserts, that it did not make the same character of proof with reference to other sales. Plaintiff, however, disregards the agreement made in court and argues as to the other sales that there is proof that they were shipped to "a retail distributing warehouse," and from there distributed. The proof which plaintiff relies upon is confined solely to evidence that cars were invoiced to a certain address where the chain store had an office, and in some instances but not all, a warehouse located at the same address. In the latter instance, it is argued by the plaintiff that proof that a car was shipped to an address where a warehouse was located is proof that its contents were sold to a "retailer distributing warehouse," and that the cheese contained in such car was "received and held for disposition to retail stores." We think this argument is unsound. In our view, the fact that the destination of a car was at a point where a warehouse was located is no proof whatever that the sale of its contents was made to a "retailer distributing warehouse" or that it was "received and held for disposition to retail stores." Even though an inference favorable to the plaintiff's contention be assumed, it is at once dispelled from the fact that each car contained a manifest directing the railroad to make delivery to the retail stores listed thereon. The objective of the manifest was to avoid delivery to a warehouse and to enable distribution to be made direct from the car to the retail stores. If the shipment was to be received and held by a warehouse for disposition to retail stores, it would seem obvious that the manifest served no purpose. The lack of proof that defendant made its sales to a "retailer distributing warehouse" and that it was there "received and held for disposition to retail stores" perhaps accounts for the fact that the court, as already noted, made no findings relative thereto.

In our view, there is only one way this judgment could be affirmed and that is on the theory advanced by the plaintiff that because the defendant does not come strictly within the definition of a "cash and car-

ry wholesaler," it must be classified as a "primary wholesaler." As shown, the proof does not bring the defendant within the definition of the latter. It would be just as reasonable to argue, however, that because the defendant was not within the definition of a "primary wholesaler," it must be a "cash and carry wholesaler." In fact, this would be a better argument for the reason that the defendant comes nearer meeting the definition of the latter than it does the former. Of course, either of these arguments presupposes that the three categories in which it was sought to place the wholesalers of cheese pre-empted the field, that is, that there could be no situation that would not fit into the definition of one of such categories. The situation in the instant matter, however, demonstrates that such a supposition is not sound. Moreover, the theory does violence to the rule which imposes upon the plaintiff the burden of proving a case entitling it to judgment. While the plaintiff's argument on this score has some plausibility, it cannot be used as a substitute for proof.

■ Plaintiff stresses the rule which calls for an interpretation of the Regulation most likely to effectuate its purpose. We hardly think, however, that such rule affords any support for a judgment based upon a factual situation which the plaintiff has failed to establish. In this connection it may be pertinent to note that the Regulation in question was not for the protection of the ultimate consumer inasmuch as it had no bearing upon the retail selling price of cheese. The purpose of the Regulation, as we understand, was to place the cheese into the hands of the retail merchant at the same price, whether it went directly from the wholesaler to such retailer or from the wholesaler to a retail distributing warehouse from where distribution was made to the retailer. In the latter instance, the wholesaler was permitted to charge less so that there would be a margin permitting the retail distributing warehouse to receive pay for its service. Thus it appears in the instant case that defendant's classification would be of concern only to the chain store organization. The fact that the chain stores furnished a manifest to be included in each car, with directions that delivery be made to their retail stores, demonstrates that they did not desire delivery to their warehouses. That they were not interested in rendering a retail distributing warehouse service, even though they had the facilities, is explained from the fact that the demand for cheese during the period in question exceeded the supply and the chain stores, as well as their retail outlets, were anxious to get the cheese into the hands of the latter as quickly as possible. Hence the mechanism heretofore described was employed to accomplish such purpose. In conclusion, we think it should also be noted that there is no intimation that the plan employed was for the purpose of evading the Regulation. On the other hand, it is clearly shown, as already noted, that the defendant acted in good faith in attempting to ascertain the classification to which it was entitled, and that it sold its cheese at a price fixed for such classification.

■ Having concluded that the plaintiff failed to prove that the defendant was a "primary wholesaler" as that term is defined, the judgment cannot stand. We, therefore, find it unnecessary to decide or discuss the issue presented by the defendant that the court erred in not dismissing the action for failure of the plaintiff to show that conditions precedent to bringing the suit had been complied with.

The judgment appealed from is reversed and remanded, with directions that it be vacated and the complaint dismissed.

KERNER, Circuit Judge (dissenting).

Assuming, without discussion, that the District Court had jurisdiction, I believe that there was sufficient proof to bring the defendant within the purview of the definition of "primary wholesaler," and that the findings of fact so found.

My examination of the record convinces me, as it did the trial judge, that to get cheese the chain stores evolved the f.o.b. Marshfield scheme on a cash and carry wholesaler basis. Defendant acquiesced and participated therein as principal. This was an artifice designed to evade the regulation.

The First National Stores is a good example, and there was evidence that all the sales to the several chain stores listed on Exhibit 1 were handled in the same manner. The railroad as the agent of the chain store provided the freight car which was the retailer's distributing warehouse. The manifest with instructions of distribution, tacked inside the car and placed there at the direction of the chain store, was for the benefit of the chain store organization. Defendant's president testified that defendant would ship a carload to one place only and that it would never ship to the individual stores of a chain, and that payment was made by the central office of the chain; thus it is clear that the use of the freight car served as a definite warehousing function and that the defendant made the sales as a primary wholesaler.

True, as the majority opinion points out, the words "retail distributing warehouse" are not in the findings, but the findings do incorporate the activities above enumerated in connection with the carload shipments and accompanying delivery instructions and they are described as sales made by the defendant as a primary wholesaler.

I would affirm the judgment of the District Court.